Roberts
*ads.*
Jackson.

ROBERTS *ads.* JACKSON, ex dem. WEBB and others.

Whenever a greater and a less estate unite in the same person without any intermediate estate, the lesser estate is merged. Where, however, a person had the fee in certain premises, by a fraudulent conveyance which was avoided in chancery, and he subsequently became the assignee of a mortgage of the same premises, *it was held,* that the equitable estate was not merged, although, as between grantor and grantee, such conveyances are generally binding and operative.

Parol evidence that a deed in the possession of the grantee was *not* delivered, is admissible, and does not infringe the rule that such evidence shall not be received to contradict a deed.

THIS was an action of ejectment, brought for the recovery of about four acres of land in the town of Cazenovia, tried at the Madison circuit in September, 1827, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

The plaintiff shewed title to the premises as follows: 1st, a deed from Charles Hill, (the common source of title to both parties,) to Stephen Clark, bearing date 1st January, 1817, conveying 100 acres of land, including the premises in question. 2d. A deed of the premises in question, from Stephen Clark to Joshua Clark, his son, for the consideration as expressed, of $2000, bearing date 6th November, 1817; and 3d, a deed from Joshua Clark to J. Ketchum and H. A. Ten Broeck, two of the lessors of the plaintiff, bearing date 5th September, 1820.

The *defendant* set up three distinct claims of title to the premises. *First.* A mortgage and a bond accompanying the same, from Charles Hill to Peter Smith, (of the 100 acres conveyed by Hill to Stephen Clark,) bearing date 6th April, 1812, duly registered on the 15th April, 1812, on which there appeared to be due and unpaid, $140; which mortgage and bond were assigned by the mortgagee to Joshua Clark, on the 9th October, 1818; and by Clark to J. Stroud, on the 31st October, 1818; and on the 7th April, 1819, Stroud assigned *the bond* and the monies therein specified to the defendant. A question was raised as to the proof of the assignment from Clark to Stroud; that offered, was a certificate of acknowledgment by the assignor before a commissioner. The plaintiff's counsel insisted that an assignment of a mortgage was

Where a judgment was entered after the filing of a bill in chancery, and there was no proof of the service of the subpœna, or of *actual* notice to the plaintiffs in the execution, previous to the entry of the judgment, a sale under the judgment was held valid, notwithstanding the *lis pendens;* and the title of a subsequent purchaser was adjudged good, although he had full notice of the suit.

An assignment of a mortgage may be read in evidence on a trial at law, without other proof of its execution than an acknowledgment by the assignor before a commissioner.

not 'such an instrument as was entitled to be read in evidence upon a certificate of acknowledgment, but that it should be proved by the subscribing witness. The objection was over-ruled. *Second.* The proceedings in a suit in chancery, commenced by W. Gardner and others, creditors of Stephen Clark, against Stephen Clark, Joshua Clark and others, to *avoid* the deed given by Stephen Clark to Joshua Clark, on the ground of fraud. The bill was filed 13th Feb. 1818, and an injunction granted, interdicting all conveyances, &c.; it was taken *pro confesso*, and on 16th June, 1818, a decree was entered, setting aside the deed in favor of the complainants, ordering a sale of the premises, and directing the defendants to join in a conveyance of the premises. The premises were sold by a master, to J. P. Webb, (one of the lessors of the plaintiff,) for $975, Webb being the agent of the complainants, and a deed was executed to him ; which sale was confirmed by an order of the court of chancery, of 7th June, 1819. J. A. Spencer, the attorney for the plaintiff, was called on to give evidence in relation to the existence of the deed to Webb. He testified that he had seen the deed amongst the papers in the chancery suit, shortly after the sale, but that he had not seen it for many years; that in 1820, the defendant told him that he (the defendant) had taken the deed from W. Whipple, with whom it had been deposited. The defendant was then sworn, and testified that he never had the deed in his possession, to his knowledge ; but if it ever was in his possession, it was not now ; that he had looked over his papers and could not find it : whereupon, parol evidence of the contents of the deed was given, though objected to by the plaintiff's counsel. The defendant then gave in evidence a release of the premises in question from J. P. Webb and wife to the defendant, bearing date 20th April, 1819, duly acknowledged on the same day, and recorded on the 8th March, 1824. The defendant, further to prove the conveyance from Stephen Clark to Joshua Clark fraudulent, proved that in 1817, (the date of the conveyance,) Joshua Clark was destitute of property ; that until then, he had lived with and been supported by his father, and was incapable of acquiring property by his own exertions. He

next shewed a judgment in favor of Joshua Clark against Stephen Clark for $600 debt, docketed 8th September, 1818, and an assignment of the same from Joshua Clark to John H. Fuller, dated 10th January, 1818, (*probably*) 1819.) He also produced an instrument under seal, executed by S. and J. Clark, dated 6th June, 1821, whereby, in consideration of $500, expressed *in the instrument*, S. and J. Clark sold, relinquished and quit-claimed all their right and title to the premises in question to the defendant, and engaged to indemnify the defendant against the effect of the last mentioned judgment. The defendant also offered in evidence a certificate under the hand and seal of Joshua Clark, dated 5th April, 1820, acknowledging the conveyance from Stephen Clark to him of the date of 6th November, 1817, to have been executed without consideration; which was objected to and excluded by the judge. The defendant then further proved, that Webb, one of the lessors of the plaintiff, had admitted that the master's deed to him of the premises in question was delivered to J. S. Spencer, the solicitor of the complainants in the chancery suit, who also are lessors of the plaintiff in this cause. *Third.* A deed from the sheriff of Madison county of the premises in question to Charles Hill, dated 16th May, 1818, by virtue of a sale under an execution issued on a judgment by confession in favor of C. Hill and C. Stebbins against *Stephen Clark*, (under whom the plaintiff claimed,) docketed 17th February, 1818, for $4000 debt; next, a deed from Charles Hill and A. Ballou to the defendant, dated 20th December, 1819, recorded 24th March, 1820; and evidence, that at the date of the deed to defendant, Hill was in possession of the premises, except a small house, which was occupied by Joshua Clark.

The *plaintiff*, to rebut the title set up by the defendant under the deed from Webb, shewed that that deed had never been *delivered* to the defendant; that a negotiation had been had between the solicitor of the complainants in the chancery suit and the defendant, relative to the sale of the premises in question; that the deed had been prepared and executed by *Webb*, the agent of the complainants, which the defendant refused to accept, as it did not contain a covenant of warran-

ALBANY,
Oct. 1828.

Roberts
*ads.*
Jackson.

ty ; that it was then agreed, by the solicitor, to procure a warrantee deed from the complainants, within a specified time, which agreement was endorsed on the original articles of agreement, and it, together with the master's deed and the deed from Webb, left in the care of Mr. W. ; that the warrantee deed was not procured, and the contract with the defendant never consummated ; that the defendant procured the deeds from the person with whom they had been deposited ; he claimed no title under them, but refused to deliver them up. The *defendant* produced in evidence the article of agreement between the solicitor and himself for the sale of the premises, and the further agreement endorsed thereon, which, after reciting that the release from Webb had been delivered to the defendant, and that Roberts wished the warranty of the complainants, extended the time for performance of the contract for three weeks : in the mean time the defendant to take possession of the premises in question, and the solicitor to take possession of a farm which was to be conveyed by the defendant, in part payment of the consideration, and each party to go on as though the conveyances were executed in pursuance of the original agreement.

The judge charged the jury, that the conveyance from Stephen Clark to Joshua Clark was fraudulent and void as to their creditors, but binding and valid as between the parties thereto ; that Joshua Clark having the title in fee, and being in possession of the premises in question, as the owner, at the time he took the assignment of the mortgage from Smith, the equitable estate acquired by such assignment *merged* in the legal estate he had in the premises; that the title acquired under the judgment of Hill and Stebbins was void, the judgment having been obtained, and the sale under it had subsequent to the filing of the bill in chancery against Stephen Clark and Joshua Clark, which was a *lis pendens* of which all were bound to take notice ; and as to the title set up by the defendant under the deed from Webb, the judge submitted to the jury the question, whether the deed was in fact *delivered* and *accepted*, in fulfilment of the terms of the contract between the solicitor of the complainants in the suit in chancery and the defendant, or whether it had been ob-

tained by the defendant without the consent of the opposite party. The jury found a verdict for the plaintiff.

*N. P. Randall,* for defendant. The defendant is entitled to retain the possession, being the assignee of a mortgage in possession. (10 *Johns. R.* 480.) The equitable estate acquired by Joshua Clark, by the assignment of the mortgage, did not merge in the fee, because the fee was void, and so declared by a decree obtained by the lessors of the plaintiff. A valid mortgage could not be merged in a void deed. The deed being adjudged fraudulent and void, Joshua Clark had no estate under it. The property vested in Stephen Clark for the benefit of his creditors. (4 *Johns. R.* 589. 3 *Co.* 78, *b.* 1 *Johns. Ch. R.* 478.) Courts of law have a right to inquire into frauds, as well as courts of equity. (10 *Johns. R.* 457. 9 *Johns. R.* 337.)

The defendant has a valid title under the judgment of Hill and Stebbins, and the doctrine of *lis pendens* does not apply. Hill and Stebbins were not parties to the suit in chancery. They obtained their judgment, and acquired a legal estate in the premises, which can only be divested by a new suit in chancery. (11 *Vesey, jun.* 194. 1 *Johns. Ch. R.* 566. 2 *id.* 441, 155, 158. 2 *Johns. Cas.* 221, 321. 3 *Johns. R.* 422.) Courts of law look only to the legal estate. There is not a case to be found, where a court of law takes notice of a *lis pendens* in another court. The bill in chancery was filed on the *thirteenth,* and the judgment of Hill and Stebbins docketed on the *seventeenth* day of February, 1818. There is no proof that they had notice of the suit before their judgment was entered. The filing of the bill was not notice. The *lis pendens* begins from the service of the subpœna ; (1 *Johns. Ch. R.* 576 ; 2 *P. Wms.* 482 ; 3 *Atk.* 392 ;) and such service was not shewn.

The parol evidence that the deed from *Webb* was *not delivered,* ought not to have been received, as it contradicted the written instrument signed by both parties, averring the delivery. (1 *Phil. Ev.* 480. 3 *Johns. R.* 506. 2 *Johns. Ch. R.* 557.) Even the *admission* of a party cannot be shewn to contradict a written instrument. (5 *Cowen,* 485.)

*J. A. Spencer,* for plaintiff. The defendant cannot claim under the mortgage. The certificate of the acknowledgment before a commissioner of the assignment from Clark to Stroud, under whom the defendant holds, did not *prove* the execution. The statute concerning mortgages does not say that an assignment thus acknowledged may be read in evidence without proof, nor is it required to be recorded. Until 1822, a *mortgage* itself, though acknowledged, was not evidence : it was then made so by statute. (*Statutes, 6th vol. a.* 261.) Previous to that time, the acknowledgment only authorized its registry. Nor can the defendant claim under the mortgage, because Joshua Clark, when he obtained the assignment thereof, was the owner of the fee; and the equitable interest thus acquired, merged in the fee. · (2 *Cowen*, 246.) Clark would not be permitted to say that his legal estate was fraudulent, nor can the defendant, who stands in his place, make that answer.

The defendant's title under *Webb's* deed was not established : 1. Because parol evidence ought not to have been received of the contents of the master's deed, upon the proof offered of its loss, on account of its insufficiency. The plaintiff said he never had the deed in his possession : how then could he prove its loss? 2. The evidence conclusively shews that the deed never was delivered, or that it was delivered as an *escrow*. The cases cited on the other side have no relevancy to this question, which was simply whether the deed was or was not delivered, and might be shewn as well by parol as otherwise. The evidence offered by the plaintiff was not to alter, vary, or contradict a written instrument. The recital in the enlargement of the contract was evidence of delivery, but not conclusive.

Nor can the deed under Hill and Stebbins' judgment, avail the defendant under the application of the rule of *lis pendens.* (4 *Cowen*, 678, opinion of COLDEN, senator.) If Stephen Clark was prohibited from conveying away his property directly, he was not at liberty to do it indirectly by confessing a judgment.

*By the Court*, SAVAGE, Ch. J.   It is perfectly well settled, whenever a greater estate and a less coincide in the same person, without any intermediate estate, the lesser is merged. (2 *Cowen*, 284.)   This rule, at law, is invariable and inflexible; (2 *Cowen*, 300;) though in equity it is not so, but depends upon intention.   Previous to the time when Joshua Clark obtained the assignment of the mortgage from Smith, the legal estate, as to the premises in question, had been in him; and had it continued in him, the mortgage as to those premises would have been extinguished.   The conveyance, however, by which he held that estate, had been avoided in equity on a bill filed by the lessors of the plaintiff; and though, as a general rule, a fraudulent deed is binding upon the parties to the transaction, the reason of the rule does not apply to this case.   The rule is, that if a party will convey away his property with the intent to defraud his creditors, the law will not aid him when he subsequently seeks to recover it back.   Here, as well the grantee as the grantor had lost the property which was fraudulently conveyed; and we cannot consider in force, a deed which had been avoided by the court of chancery, and the property restored to the grantor for the benefit of his creditors, and impose the further penalty upon the grantee, (considering the assignee of the mortgage to stand in the place of the assignor,) of losing a mortgage security, on the assumption that he has the legal estate in which *is merged his equitable estate as assignee of the mortgagee*, when that estate has been avoided by a decree of the court of chancery.   Having lost, by that decree, the legal estate which he had fraudulently obtained in the premises, it is to him as if it never had existed; and more especially would it be unjust to apply this rule of law to the defendant in this action.   He is the assignee of a mortgage interest, was not a party to the fraudulent conveyance, claims nothing under it, and is not affected with notice of the transaction.   The deed from Stephen Clark to Joshua Clark, therefore, being considered as void, there is no merger.

Under this branch of the defence, it is proper to notice a question as to the proof of the assignment of the mortgage

from J. Clark to Stroud. It was objected, that this assignment could not be read in evidence upon being acknowledged before a commissioner. I incline to the opinion that this objection was properly overruled. The mortgage, for the purpose of proof, is considered a deed concerning lands; and as the assignment conveys the interest of the mortgagee, it must also, for the same purpose, be considered, if under seal, a deed, conveyance or writing, concerning lands, tenements or real estate, in the language of the act, and may be proved in the same way as the mortgage. It is true, that the recording the assignment is not necessary to its validity; but it may be recorded, and proof under the statute is *prima facie* sufficient.

The second ground of defence rests on the deed from Webb. In relation to this point, the jury have found, that the deed from Webb to the defendant was never delivered; and this verdict is fully warranted by the evidence. The only question here is, whether parol evidence could be received to shew the non-delivery. It is always competent to shew that the deed was delivered as an escrow, or that the grantee obtained possession of it by fraud, or in an unwarrantable manner. This must, of necessity, be shewn by parol; and this species of evidence has never been considered as coming within the rule which rejects parol proof when offered to contradict a deed.

The third branch of the defence is sustained by a deed from C. Hill, who purchased at sheriff's sale, under a judgment against S. Clark, docketed February 17, 1818. This judgment was confessed four days after the injunction was granted in chancery. The rule as to *lis pendens* is, that an alienation pending a suit is void; and though the purchaser pays a full consideration, if he had only constructive notice, the conveyance is inoperative. (1 *Johns. Ch. R.* 577, 581.) Chancellor Kent says, the *lis pendens* begins from the service of the subpoena after the bill is filed. (1 *Johns. Ch. R.* 576.) When the subpoena was served in this case does not appear. The bill was filed February 13, 1818, and a decree was obtained June 16, 1818. The defendant did not purchase under this title till December 25, 1819. He had, in April pre-

vious, entered into a contract with Spencer to purchase from Webb, the agent of the plaintiffs in chancery. Most clearly, therefore, *he* had notice of the *lis pendens* in chancery, or rather he knew that Webb had purchased under the decree in chancery; and this deed from Hill seems to have been taken to fortify him in the title which he had surreptitiously possessed himself of, by procuring the deed from Webb, and the contracts between himself and Spencer. Under all the circumstances of this case, it seems to me that notice of the *lis pendens* may fairly be inferred, as to the defendant, but not as to the plaintiffs in the judgment. There is no proof of the service of the subpœna, or of actual notice before judgment docketed. The sale under this judgment, therefore, conveyed a valid title; and, as the conveyance from S. Clark to J. Clark, was fraudulent and void *as to the plaintiffs*, the sale under the judgment conveyed to the purchaser the title of S. Clark. The defendant, by purchasing of Hill, became possessed of the title of S. Clark, discharged of the deed to J. Clark, and therefore has the elder title.

The defendant offered in evidence a written declaration of J. Clark, that the conveyance to him was without consideration. This was properly rejected. This instrument was executed in 1821, after all interest in J. Clark had ceased. It was shewn, also, that S. Clark had confessed a judgment to J. Clark, which was assigned to a third person; and also a quit-claim from the Clarks in 1821, and an engagement to indemnify the defendant against the judgment. I cannot see the relevancy of this testimony, as the title of the Clarks ceased in 1818.

I am therefore of opinion that the motion for a new trial be granted, with costs to abide the event.