JOHN WILLIAMS and ARTHUR McGOFF, Plaintiffs in Error, *v.* THE PEOPLE, Defendants in Error.

The provisions of the Code of Procedure, making a party a witness in his own behalf, do not apply to parties to suits in criminal prosecutions.

The provisions of the Code, changing the common law rule as to the competency of parties to suits as witnesses, applies only to civil actions.

HUNT, J.    The plaintiffs in error, who were the original defendants, were indicted in the county of Rensselaer for the crime of robbery, and in June, 1865, were tried and convicted of that offense by the Court of Oyer and Terminer of that county.

On the trial, each defendant was offered as a witness in his own behalf, and was rejected. This rejection is claimed by the defendants as having been erroneous, and to correct it this writ of error has been brought. The question is thus presented, whether a defendant, who is indicted for a criminal offense, is a competent witness in his own behalf.

The defendants claim that the progressive spirit of the age has extended to the administration of justice, and that the admission to testify, on his own behalf, of a felon on trial for his life or his liberty, is but an illustration of this spirit. It is quite certain that many innovations have been made in the administration of justice reversing the rules of the common law, prominent among which are the following: That no person offered as a witness in a cause shall be excluded by reason of interest in the event of the action; that a party to a civil action may be compulsorily examined by his adversary; and finally, that a party to a civil action and in special proceedings, except under circumstances of limitation, may testify on his own behalf. These are undoubtedly great departures from the ancient rules of the common law; and whether the legislature has taken the additional step claimed by the defendants, we will now examine.

The defendant's counsel bases his argument upon the amendment of the Code of 1865, ch. 615, which enacts as as follows:

"Section 399 is hereby amended so as to read as follows: § 399. A party to an action or special proceeding in any and all courts, and before any and all tribunals, and before any and all officers, acting judicially, may be examined as a witness on his own behalf, or on behalf of any other party, in the same manner, and subject to the same rule of examination as any other witness; provided, however, that an assignor of a thing in action shall not be examined in respect to a transaction had by such assignor with a deceased person against parties who are executors, next of kin, &c., except under certain circumstances; but when such executors are examined, then such assignor may be examined in regard to such matter, but not in regard to any other matter. But if the testimony of the party to the action or proceedings has been taken, and he shall afterwards die, and after his death his testimony shall be used upon a trial or hearing in behalf of his executors, &c., the other party or assignor of the thing in action shall be a competent witness as to all matters to which the testimony so taken relates. And nothing contained in section eight of this act shall be held or construed to affect or restrain the operation of this section."

Section eight, above referred to, enacts as follows: "This act (the Code of Procedure, entitled, 'an act to simplify and abridge the practice, pleadings, and proceedings of the courts of this State,' passed April 12, 1848), is divided into two parts. The first relates to courts of justice and their jurisdiction; the second relates to civil actions commenced in the courts of this State after the first day of July, 1848, except when otherwise provided therein, and is distributed into fifteen titles. The first four (§§ 69 to 126, both inclusive) relate to actions in all the courts of the State, and the others to actions in the Supreme Court, in the county courts, in the Superior Court of the city of New York, in the Court of Common Pleas for the city and county of New York, in the mayors' courts of cities, in recorders' courts of cities, and to appeals to the Court of Appeals, to the Supreme Court, to the county courts, and to the Superior Court of the city of New York."

It is then argued in behalf of the defendants, that the broad terms of the amendment of 1865, extending to "an action or special proceeding in any and all courts and before any and all tribunals, and before any and all officers acting judicially," and the definition of an action in section two of the Code, as " an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense," and the exemption from the restraint of section eight, exhibit the intention of the legislature to embrace within the amendment of 1865, the case of a criminal when on trial upon an indictment. We will examine these suggestions in order :

First. The amendment of 1865 was evidently drawn by a person discriminating in the use of language and appreciative of its effects. The legislature passing it are also presumed to have understood the force of the language used ; and if they had intended to embrace criminal actions within the scope of the amendment under consideration, nothing would have been easier than to have placed their intention beyond doubt. The use of the simple words, "in all cases, criminal as well as civil," would have accomplished the purpose. They knew that the subject matter of legislation, under section 399, was that of civil actions exclusively, and that it would at least be doubtful whether criminal actions would be deemed to be included in its general terms, and we think it impossible that they would have refused the simple and easy use of the word " criminal," if actions of that character had been intended to have been included. The omission of it, is significant of an intention not to include criminal cases. The principle of the alleged change is more radical than all that have preceded it, and we cannot believe that the legislature would pass by the plainest language to adopt the doubtful and obscure.

Again, as has been remarked, the section in question is included among those prescribing the rules of practice and pleadings in civil cases.

Title XI, in which it is found, is entitled " of the miscellaneous proceedings in civil actions and general provisions." Part II, of the code of which Title XI is but a subdivision, is entitled " of civil actions," while the code itself is entitled " an act to simplify and abridge the practice pleadings and proceedings of the courts of this State."

In submitting this code to the legislature in 1848, the commissioners say that " the part submitted, is in relation to civil actions," and that the parts " relating to criminal actions will be the subject of future reports." A report on the subject of criminal law was made to the legislature in 1850, and was the subject of legislative consideration in 1855, and again in 1857. The distinct characters of the civil and criminal branches of the law, as intended to be carried out by different codes, are so well known in the legislation on the code, that it would be superfluous to go into further details in relation to it. We leave this branch of the case, with two remarks : First, that in all the enactments of the present code, there is not a provision, a word, or any allusion to the " criminal " law of the land, except the one heretofore quoted as a portion of section two, and section five, immediately following, which simply define a criminal action, and the section describing the courts by name. The other remark is, that the entire context of sec. 399, is applicable and exclusively so to civil actions. Such are the expressions, " assignor of the thing in action," " executor," " heir-at-law," " devisee," " next of kin," &c., the provisions for the taking of testimony to be used on a trial of a party deceased, and the instances in which such testimony may be used and how rebutted. While it would certainly be competent to the legislature to enact the provisions as claimed by the defendants, and to place it in sec. 399, its enactment in that connection would be singularly misplaced, and we do not think that such was their intention.

Nor do we perceive any embarrassment from the expression that " nothing contained in section eight shall be held or construed to affect or restrain the operation of this section." The first act, authorizing the examination of a party in his

own behalf, was passed in 1857, and enacted that "a party to an action or proceeding may be examined as a witness in his own behalf," &c.   In 1860 it was again enacted "that a party to an action or special proceedings in surrogate courts, and summary proceedings for the recovery of the possession of land, may be examined in his own behalf," &c.   Objections were still made, that section eight restricted the operation of the provision to the courts therein enumerated, and decisions were made against the admissibility of the witness in his own behalf.   Although the amendment of 1857 enacted that the party might thus testify in any action or "proceeding," it was held in 26 Barbour, 317, that the case did not include proceedings before a surrogate.   This question was also considered, but not decided by this court, in 23 N. Y., 17.

When, therefore, the legislature said that the party might testify in his own behalf, in all courts and before all the tribunals, there was still abundant reason for cutting off the restraint of section eight, without assuming thereby an intention to include criminal actions.   As section 399 was, by section eight, limited to the specific cases and courts in the latter section mentioned, there was a large class of cases in which it might be claimed that the party still could not testify in his own behalf.   Among them were district courts in the city of New York; marine courts in the city of New York; proceedings to obtain title to real estate by a corporation; proceedings to determine adverse claims to real property; proceedings for the custody and disposition of the estates of idiots, lunatics and drunkards; proceedings upon *habeas corpus,* mandamus, prohibition and *certiorari;* attachment proceedings against debtors, and many others that might be mentioned.   By the terms of section eight these cases would not be affected by any amendment of section 399, as it was expressly enacted that section 399 was only applicable to certain tribunals of which these did not form a part.

The legislature of 1865 intended by their amendment to settle these disputes, and to provide that in any case or proceeding in the civil administration of justice in this State, as well those not mentioned in section eight, as those men-

tioned, the party should be admitted to testify in his own behalf. To accomplish this, it was quite important to state that the enactment was released from the provision of section eight.

The judgment of the Oyer and Terminer of Rensselaer is right and should be affirmed.

Judgment affirmed.