Church
v.
Gilman.

CHURCH *vs.* GILMAN.

*Delivery* is essential to the validity of a *deed;* but the delivery need not be
to the grantee in person; it is enough if the deed be delivered to a third
person *for the use of the grantee.*

If the delivery to the third person be absolute, the grantor *not reserving any
future control over the deed,* the estate passes; the assent of the grantee
to accept the conveyance being *presumed,* from the fact that the convey-
ance is beneficial to him.

Where a *deed* is executed by one as the *attorney* of another, and it becomes
necessary to plead its execution, an averment that it was delivered *as the
deed of the attorney* is bad ; it should be averred to be delivered by the at-
torney *as the deed of the principal.*

Where a plaintiff, in an action for a breach of the covenant of seisin, has
denied by replication the *delivery* of the deed under which the defendant
claims to have had title, alleging that such deed was not delivered *before
the ensealing and delivery of the deed declared upon,* a rejoinder that it was
delivered *before the commencement of the suit* is bad, although a date ante-
cedent to the date of the deed declared on be alleged, where such date is
given under a *videlicet.*

*Facts,* and not the *evidence of facts,* must be pleaded, or the pleading will
be held bad as argumentative.

DELIVERY of deed. This is an action for the breach of the
*covenant of seisin* in a deed of lands executed by the defend-
ant, bearing date 22d May, 1835. The defendant put in *sev-
en pleas,* three of which, viz. the fourth, fifth and seventh, re-
sulted in demurrers. The *fourth* plea states that the *state of
Connecticut* being seized in fee of the lands mentioned in the
declaration, on the 10th April, 1835, by deed of conveyance
made and executed by Isaac Spencer, treasurer of that state,
(he being thereunto duly authorized and empowered by an
act of the assembly of the state,) did grant unto the defend-
ant, and to his heirs and assigns forever, the lands conveyed
by the defendant to the plaintiff; making a *profert* of the deed.
To this plea the plaintiff *replied,* that the deed set forth in the
plea was *not delivered* to the defendant *at the time of the execu-
tion of his deed to the plaintiff.* The defendant *rejoined,* that
on the 3d October, 1834, having fully paid the consideration
money for the premises, and being entitled to a deed of the
same from the state of Connecticut, he employed L. Ward,

jun., of Rochester, to procure such deed ; that Ward prepar-
ed the deed, and transmitted it to the treasurer of Connecticut
to be executed and returned to him for the defendant ; that
Spencer, treasurer of the state. of Connecticut, afterwards, to
wit, on the 10th April, 1835, and *before the making and exe-*
*cution of the deed by the defendant to the plaintiff*, signed,
sealed and acknowledged the deed mentioned in the fourth
plea, and delivered it to one Seth P. Beers at Hartford, *as his
(said Spencer's) deed*, to be transmitted to Ward for the de-
fendant. To this *rejoinder* the plaintiff *demurred*, assigning
for causes of demurrer that the defendant had not tendered
an issue upon the fact traversed by the plaintiff ; that the re-
joinder is argumentative ; that it is a departure from the plea ;
and that it sets forth the *evidence of a fact*, instead of the
fact itself.

The *fifth plea* sets forth that the state of Connecticut being
seized in fee of the premises mentioned in the declaration, on
the 10th April, 1835, by deed made and executed by Isaac
Spencer, treasurer, &c. who was thereunto duly authorized
and empowered, granted to the defendant in fee simple the
said premises ; making profert of the deed. To this plea the
plaintiff put in the same *replication* as that put in by him to
the fourth plea. The defendant *rejoined* that the deed *was
delivered* on the 10th April, 1835, by Spencer, as treasurer, to
one Seth P. Beers, of Hartford, *as the deed of the state of Con-
necticut to the defendant ;* that the deed was delivered to Beers
for and with the sole purpose and intent that it should be
transmitted by him to Ward, the agent of the defendant for
procuring the deed ; that Beers, afterwards and *before the en-
sealing and delivery of the deed from the defendant to the
plaintiff*, to wit, on the 15th April, 1835, transmitted the deed
to Ward for personal delivery to the defendant. The plain-
tiff *demurred*, assigning the same special causes as before.

The *seventh plea* sets forth that the state of Connecticut,
long previous to the 10th April, 1835, was seized of the prem-
ises, and being so seized, contracted to sell and convey the
same to the defendant, on payment by him of a certain stipu-
lated sum ; that the defendant, before the 10th April, 1835,
having paid up the purchase money, became entitled to a

deed of the premises; that the state of Connecticut, in pursuance of the contract and in order to carry the same fully into effect by Isaac Spencer, treasurer, &c. duly authorized, &c. by deed, did grant the premises to the defendant, making profert of the deed. Same *replication* as before. The defendant *rejoined* that the deed in the seventh plea mentioned, *at and before the commencement of this suit*, to wit, on the 20th May, 1835,*was delivered to the defendant.* To this rejoinder the plaintiff *demurred,* assigning for causes that the rejoinder does not tender an issue upon the fact traversed, viz. that the *replication* tenders an issue upon the fact of the delivery of the deed from the state of Connecticut *before the sealing and delivery of the deed of the defendant to the plaintiff,* and the rejoinder attempts to put in issue the fact of the delivery of the deed from the state of Connecticut *before the commencement of this suit;* that it tenders an immaterial issue and is a departure.

This cause was submitted on written arguments by

*M. Taggart,* for the plaintiff.

*E. D. Smith,* for the defendant.

*By the Court,* SAVAGE, Ch. J.* The pleadings all concede, what could not be denied, that *delivery* is essential to the validity of a deed. The questions are, what facts are necessary to constitute a delivery. As was said by the court in *Jackson* v. *Richards,* 6 *Cowen,* 617, 18, it is essential to the validity of a deed, that it should be delivered by the grantor and accepted by the grantee. A deed takes effect only from its delivery; and there can be no delivery without acceptance, either express or implied. They are necessarily simultaneous and correlative acts. *See also* 2 *Wendell,* 317. The pleas do not state the delivery. In the case cited, it was said that in pleading it was not necessary in terms to aver either the sealing or delivery of a deed: they are both implied in the term deed or writing obligatory; but this is merely a rule of

---

* This opinion was delivered at the last *July* term.

pleading, and does not decide what facts shall be evidence of sealing or delivery. The fact of delivery may be controverted by evidence, and also by pleading. Hence the plaintiff, in answer to all three of the pleas now under consideration, simply denies the delivery ; and to this denial, the defendant has rejoined in three different modes. The questions are distinct under each plea ; and for the purpose of considering them separately, I will state them distinctly. The *fourth plea* avers title in the state of Connecticut, on the 10th of April, 1835 ; and that on that day, the state, by its authorized agent, Isaac Spencer, did grant, sell, bargain and confirm the premises to the defendant, his heirs and assigns. Upon the replication interposing the fact of non-delivery, the rejoinder states the facts at large, to wit, that on the 3d October, 1834, the defendant was entitled to a deed, having fully paid the consideration ; that he employed Levi Ward, of Rochester, to procure the deed from the state of Connecticut ; that Ward prepared the deed, and sent it to the agent of the state to be executed ; that the agent signed, sealed and acknowledged the deed, and delivered it to Seth P. Beers, *as his (said Spencer's) deed*, to be transmitted to Ward for the defendant. The *fifth* plea and replication are substantially like the fourth. The rejoinder, however, is different : it states, like the preceding, that the deed was signed, sealed and acknowledged by the agent of the state, and was delivered to Beers *as the deed of the state of Connecticut to the defendant*, and that on the 15th April, 1835, it was directed at Hartford by Beers to Ward at Rochester, for personal delivery to the defendant. The *seventh plea* states that the defendant was entitled to a deed from the state of Connecticut ; that the state, by Spencer, who was fully authorized, did by deed give, grant, &c. the premises to the defendant ; and as to the *delivery*, the rejoinder avers that *before the commencement of the suit*, to wit, on the 20th day of May, 1835, the deed was delivered to the defendant. There are therefore three distinct questions presented, but all upon the point of *delivery :* 1. Whether a delivery of the deed *to a stranger*, as the *deed of the agent*, is a valid delivery. 2. Whether a like delivery of the deed *to a stranger*, by the agent, as the *deed of the principal*, is a valid delivery. 3. Whether a

deed dated the 10th April, 1835, and delivered to the defend-
ant on the 20th May, 1835, two days before the defendant
conveyed to the plaintiff, justified such conveyance. This is
the question upon the record ; but it has been argued by coun-
sel, as if the delivery to the defendant was *subsequent to the
conveyance* by the defendant to the plaintiff, but *before the
commencement of this suit.*

The delivery may be made to a *stranger.* The *Touchstone*
is referred to as authority by most of the cases to be found on
this subject. It is there said, 1 *Touch.* 57, 58, that delivery
is essential to the validity of a deed ; that the delivery may
be made by the party himself, or any other by his appoint-
ment. So the delivery may be made to the party himself to
whom it is made, or to any other authorized to receive it ;
" or it may be delivered to any stranger, for and in the behalf,
and to the use of him to whom it is made, without authority ;
but if it be delivered to any stranger without any such decla-
tion, intention or intimation, unless it be in case where it is
delivered as an escrow, it seems there is not a sufficient deliv-
ery." In *Jackson* v.*Phipps,*12*Johns.R.*421,Mr. Justice *Spen-
cer* quotes the above doctriue from theTouchstone with appro-
bation. He reiterates the point decided in *Jackson* v.*Dunlap,*
1 *Johns. Cas.*114, that it is essential to a deed that a grantee
assent to receive it ; that there can be no delivery without
acceptance, and that it would be absurd to hold that a thing
was delivered where there was no person to receive. In that
case, the deed had been executed and acknowledged, and
left in the clerk's office for recording ; but neither the grantee,
nor any person on his behalf, was present to receive it, and
therefore it was held to be inoperative. In the case of *Ver-
plank* v. *Sterry,*12 *Johns.R.*550, the same point was present-
ed and discussed by the same learned judge. The facts were
however different : a trust deed, by way of a family settlement,
had been delivered to the *cestui que trust,* and by her after-
wards returned to the grantor for safe keeping, and while the
deed was so in his possession, he conveyed the same premises
to a *bona fide* purchaser. The subject of the delivery ne-
cessary to consumate a deed was again discussed, and it was
remarked that a deed is available if delivered to the party

grantee, *or even to a stranger without special authority, if intended for the use of the grantee.* The point became important in that case, as the delivery to the *cestui que trust* was unconditional, and a subsequent delivery to the *trustee* was conditional; which condition the learned judge held to be inoperative and void, because the deed had become effectual by the first delivery. This delivery was not strictly to a stranger, but to a person not a party, nor taking any legal estate under the deed. In *Jackson* v. *Bodle*, 20 *Johns. R.* 187, the same point of the necessity of *acceptance* was presented to the court, and Spencer, C. J. says, " It is necessary to the validity of a deed, that there be a grantee willing to accept it. It is a contract, a parting with the property by the grantor, and an acceptance thereof by the grantee. An acceptance will be presumed from the beneficial nature of the transaction, where the grant is not absolute. The presumption is not so strong that the grantee accepts the deed, where he derives no benefit under it, but is subjected to a duty or the performance of a trust.'" If an acceptance will be presumed, where the deed is not absolute, because the transaction is not beneficial to the grantee, surely such presumption will prevail where the deed is absolute, and on its face beneficial to the grantee. Much more will an acceptance be presumed, where it appears by proper averments, that the grantee was entitled to the deed, having paid the consideration : where the deed had been prepared and forwarded for execution by the grantee or his attorney, and had been executed upon his solicitation Although, therefore, there is no case in this court where the facts called for the decision of the precise point, that a delivery to a stranger for the use of the grantee is a good delivery, yet the doctrine of the *Touchstone* has been quoted to that effect with approbation, whenever the subject of delivery has been before the court.

In Connecticut the very point has been decided in *Belden* v. *Carter*, 4 *Day*, 66. The action was ejectment by the plaintiffs, as heirs at law of Hogaboom. The defendants claimed by deed from Hogaboom to defendant's wife when sole. After the grantor had signed and acknowledged the deed, he addressed E. Wright, Esq. and said : " 'Take these deeds and

ALBANY,
Oct. 1836.

Church
v
Gilman.

keep them; if I never call for them, deliver over one to Pamela (defendant's wife) and the other to Noble, after my death. If I call for them, deliver them up to me." W. received the deeds, H. never called for them; after his death they were delivered according to his directions. Pamela was not present, and never conversed with W. on the subject. These deeds were executed at the same time when H. made his will. The court said, the reservation to countermand made no difference; it was in the nature of a testamentary disposition of real estate, and was revocable without an express reservation. The case therefore stood as if there had been no reservation. "It was a delivery of a writing as a deed, to the use of the grantee, to take effect at the death of the grantor, deposited in the hands of a third person, to hold till that event happened, and then to deliver it to the grantee. The legal operation of this delivery is, that it became the deed of the grantor presently; that Wright held it as trustee for the use of the grantee; that the title became consummate in the grantee by the death of the grantor, and that the deed took effect, by relation, from the time of the first delivery." The case of *Wheelwright* v. *Wheelwright*, 2 *Mass. R.* 447, was one which called for the decision of the same point. That was an action in partition, in which the petitioners claimed by deeds from Samuel Wheelwright, from whom also the defendants claimed, under his will. There Joseph, one of the petitioners, requested the witness to draw the deeds; Samuel called upon witness and executed them, and delivered them *for the use of the grantees*, to be delivered after the death of the grantor. Chief Justice *Parsons*, in discussing this point, says, " If a grantor deliver any writing, *as his deed*, to a third person, to be delivered over by him to the grantee on some future event, it is the grantor's deed presently, and the third person is the trustee of it for the grantee. The fact that the deed in this case was delivered to Mr. Beers, to be forwarded immediately to the grantee, makes this case stronger than where the deed was to be delivered over upon some future event." The case of *Hatch* v. *Hatch*, 9 *Mass. R.* 307, was very similar to *Wheelwright* v. *Wheelwright*, except that in this case the petitioners were heirs at law, and the defendants claimed under deeds ex-

ecuted about four years before the death of the grantor, in the absence of the grantees, and delivered by the grantor to J. Turner, Esq. to be delivered to the grantees if they survived him. *Sewall*, justice, adopts the previous case as settling the law. These cases are cited and approved by this court, in *Ruggles* v. *Lawson*, 13 *Johns. R.* 285, which was somewhat similar, and the court say the deed takes effect from the first delivery. The case of *Maynard* v. *Maynard*, 10 *Mass. R.* 456, shows the necessity of an absolute delivery to give validity to a deed executed under such circumstances. In this case the deed was executed with the usual formalities, and recorded, and the grantor requested the witness *to keep the deed until it was called for.* The grantee knew nothing about these transactions. After the death of the grantee, the grantor called for the deed, took and cancelled it. The court said, it was clear that there was no delivery of the deed so as to pass the estate; it was the intention of the grantor to keep control over the deed until fully determined whether ultimately to pass the estate to the grantee. The court say the title never passed. The only reason why it did not pass was, that the deed was not delivered as the deed of the grantor, for the use of the grantee. These cases are full to the point; they were in the nature of testamentary dispositions, but not, on that account, to be the less regarded as authority. If deeds thus delivered are valid against the heir or devisee, they are surely good against the grantor who has received a valuable consideration. The question in both cases is, whether the grantor has divested himself of the estate; if he has, that estate vests in the grantee; and whether he has so divested himself or not, depends on the delivery. If the delivery is absolutely as his, the grantor's, deed, to the stranger for the use of the grantee, the delivery is good; but if it be delivered to the stranger subject to the future control of the grantor, no estate passes. Where the delivery is absolute, the assent of the grantee is presumed from the fact that the conveyance is beneficial to him. In this case it is not necessary to presume assent, for it is alleged that the deed was drawn by the defendant's agent, and executed at his solicitation. It appears to me, therefore, that the delivery of the deed of the state of Connecticut to Mr.

Beers, as the deed of the state for the use of the grantee, the defendant, was a good and valid delivery. It is very well settled, however, that an attorney must execute a deed in the name of his principal. The act must be the act and deed of the principal, though done by the attorney. So the delivery must be as and for the deed of the principal, not of the attorney. The rejoinder to the replication to the fourth plea is in that respect bad.

The reasons and authorities referred to under the first question show that although the delivery of the deed, *as the deed of Spencer,* was bad; yet its delivery *as the deed of the state of Connecticut,* for the use of the defendant, the grantee, was a valid and effectual delivery. The deed became the deed of the state presently; and the title vested in the grantee as of the day of such delivery. Of course the defendant was seized on the 22d May, when he conveyed to the plaintiff. It follows that the rejoinder to the replication to the *fifth plea* is good; and for the same reasons, and indeed, independent of these considerations, that the rejoinder to the replication to the *seventh plea* is good in substance, provided the facts are well pleaded. The replication denies the delivery; the rejoinder affirms it to have been made to the defendant *before the commencement of the suit,* to wit, on the 20th May, 1835, which was in fact two days before the conveyance of the defendant to the plaintiff. Had the averment been that it was delivered *before the execution of the deed* to the plaintiff, it would have been perfect; but as pleaded with a *videlicet,* the defendant would not be bound to prove the delivery on the 20th May, 1835. Showing the delivery any day before the commencement of the suit would be sufficient to sustain it. A question, however, still arises, whether the delivery of the deed to the defendant at any time before the commencement of this suit, is not a bar to the action. I think it is; but a majority of the court think otherwise; my brethren are of opinion that the covenant of seizin being broken at the moment it was executed, the plaintiff is entitled to recover damages for the breach, although such damages may be merely nominal. My opinion is that the plaintiff's title being perfect, before he commenced his suit, he had no cause of action, although such

cause might have existed before the delivery of the deed from the state of Connecticut to the defendant. Having thus examined these pleadings upon the merits, and ascertained that the right of the case is with the defendant, it is not without regret and reluctance, that it becomes necessary to decide the whole of the demurrers against the defendant, upon a point of form. The rejoinders are all argumentative. The defendant has pleaded the evidence of the fact of delivery, instead of the fact itself, and for that cause the rejoinders are bad. The result is, that the rejoinders are bad in form, for the cause last mentioned ; that the rejoinders to the replications to the 4th and 7th pleas are also bad in substance ; but the rejoinder to the replication to the 5th plea is good in substance, though bad in form. There must be judgment for the plaintiff on all the demurrers, with leave to the defendant to amend, on payment of costs.

Judgment accordingly.